UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DEREK MATTHEWS,

      Plaintiff,

      v.

SYSOMBATH and TOUT,[1]

      Defendants.

No.  2:22-cv-1329 DJC CSK P

ORDER AND

FINDINGS & RECOMMENDATIONS

This action proceeds on plaintiff's state law causes of action for sexual assault and battery and intentional infliction of emotional distress against only defendants Sysombath, Tout, and Does 1-10.  Defendants Tout and Sysombath's fully briefed motion for summary judgment on exhaustion grounds is before the Court.  As set forth below, it is recommended that the motion for summary judgment be granted, and this action be dismissed based on plaintiff's failure to timely exhaust his administrative remedies.

I.     BACKGROUND

Plaintiff filed a first amended complaint on December 15, 2023.  (ECF No. 64.)  Plaintiff alleged that defendant Pinchback, a CAL-PIA employee, sexually assaulted plaintiff from May to October 2015, and that on October 15, 2015, defendants Tout and Sysombath conducted an

_____

[1]  In light of the dismissal of defendant Pinchback, the caption is changed to reflect the two defendants that remain.

1

examination of plaintiff's penis during the investigation into the sexual conduct between plaintiff and defendant Pinchback.

On December 20, 2024, in ruling on defendants' motion to dismiss, the district court dismissed plaintiff's Fourth and Eighth Amendment claims against defendants Price, Sysombath, Tout, and Does 1-10, and First Amendment claims against defendants Price, Sysombath, Tout, and Does 1-10, as barred by the statute of limitations.  (ECF No. 87.)  The district court also dismissed plaintiff's claims for negligence and negligent infliction of emotional distress against defendants Price and Does 1-10 as barred by the statute of limitations and based on plaintiff's failure to file a government tort claim or to file a late government tort claim.  (ECF No. 87 (citing Cal. Gov't Code sections 911.2 and 911.4).)  The district court granted defendant Pinchback's motion to dismiss.  (ECF No. 87.)  The district court partially denied the CDCR defendants' motion to dismiss, and ordered this case to proceed solely on plaintiff's state law claims for sexual assault and battery and intentional infliction of emotional distress against the CDCR defendants and Does 1-10.  (Id.)  Plaintiff's federal claims against the CDCR defendants were dismissed, as were defendants Pinchback and Price.  (Id.)

Defendants Sysombath and Tout filed an answer on January 17, 2025.  (ECF No. 90.)  On March 26, 2025, defendants were granted leave to file a motion for summary judgment on exhaustion grounds.  (ECF No. 96.)  On May 9, 2025, defendants Sysombath and Tout filed their motion for summary judgment.  (ECF No. 97.)  Plaintiff filed an opposition on June 4, 2025. (ECF No. 101.)  On June 25, 2025, defendants filed their reply.  (ECF No. 104.)

II.    FIRST AMENDED COMPLAINT

In relevant part, plaintiff alleges that, from May 2015 through October 2015, while he was an inmate at Deuel Vocational Institution ("DVI"), he was sexually harassed and assaulted by defendant Pinchback.  (ECF No. 64 ¶¶ 5, 26-30.)  Plaintiff alleges that, on or about October 15, 2015, the sexual misconduct was discovered by a prison employee and reported to prison authorities.  (Id. ¶ 31.)  That same day, plaintiff alleges he was detained and questioned concerning the sexual misconduct.  (Id. ¶¶ 32–36.)  During the questioning, plaintiff alleges the investigators implied that, instead of plaintiff being the victim, plaintiff may have been the one

2

who raped defendant Pinchback.  (Id. ¶ 33.)

Following the interrogation, plaintiff alleges he was taken to a room where he was handcuffed and shackled.  (Id. ¶ 36.)  Plaintiff alleges defendant Sysombath and Does 1-10 "forcefully pulled down [plaintiff's] underwear and administered a procedure on [his] penis."  (Id.)  Defendant Sysombath "inserted an object into [plaintiff's] penis, causing [him] immense pain." (Id.)  Plaintiff alleges defendants purportedly performed this "non-consensual penetration of [plaintiff's] penis" in order to obtain defendant Pinchback's DNA from plaintiff's body.  (Id. ¶ 37.)  However, plaintiff alleges that the procedure served "no investigatory purpose," but instead "was intended solely to humiliate, degrade, and intimidate [plaintiff] and cause cruel and extreme pain and suffering for retaliatory and sadistic purposes."  (Id.) Plaintiff claims defendant Sysombath performed this procedure in the presence of defendant Tout and while defendant Tout held down plaintiff's arms.  (Id. ¶ 38.)  Based on these allegations, plaintiff asserts claims for sexual assault and battery and intentional infliction of emotional distress against defendants Sysombath, Tout, and Does 1-10.[2]  (Id. ¶¶ 135-60.)

III.    LEGAL STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c).)  "Where the nonmoving party bears the burden of proof at trial, the moving party need

---

[2]  Plaintiff brought causes of action for negligence and negligent infliction of emotional distress against all defendants, but his allegations as to these causes of action pertain only to defendant Price.  (See ECF No. 64 ¶¶ 161-68.)  Therefore, plaintiff has not asserted claims for negligence and negligent infliction of emotional distress against defendants Sysombath and Tout. (ECF No. 87 at 2 n.1.)  Defendant Price was dismissed by the district court on December 24, 2024.  (Id. at 8.)

only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled on other grounds as stated in Flood v. Miller, 35 F. App'x 701, 703 n.3 (9th Cir. 2002).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

4

trial." T.W. Elec. Serv., 809 F.2d at 630.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's notes to 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  A verified complaint may be considered as evidence at the summary judgment stage "if it is based on personal knowledge and if it sets forth the requisite facts with specificity." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586 (citation omitted).

By notice filed on May 9, 2025, plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (ECF No. 97 (citing Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc)).)

IV.    UNDISPUTED FACTS ("UDF") REGARDING EXHAUSTION

For purposes of summary judgment, the undersigned finds the following facts are undisputed.

1. On August 13, 2019, plaintiff filed a complaint in Matthews v. Brown, et al., 2:20-cv-2515 JAM DB (E.D. Cal.) (hereafter "Matthews I") regarding the same allegations at issue in this

action.[3]

2.  In 2015, the time of the matters at issue in the complaint in Matthews I, the California Department of Corrections and Rehabilitation ("CDCR") had a comprehensive administrative appeals system for prisoner complaints.  Cal. Code Regs. tit. 15, § 3084, et seq.  Section 3084.1(a) provided that any inmate may appeal any departmental decision, action, conditions, or policy which the prisoner can demonstrate as having a material effect upon his welfare.  Id. at § 3084.1(a).[4]

3.  Plaintiff has submitted at least twelve grievances during the time that he has been incarcerated with CDCR.  (ECF No. 98 at 2 ¶ 4; see also Cal. Code Regs. tit. 15, § 3084.6(a)-(f).)

4.  Plaintiff did not submit any grievance relating to the allegations at issue in this action before filing the complaint in Matthews I on August 13, 2019.[5]

5.  On November 12, 2020, defendants in Matthews I filed a motion to dismiss contending, among other arguments, that "plaintiff's allegations affirm there was an available administrative grievance procedure which he did not utilize."  Matthews I (ECF No. 58 at 5; ECF No. 100 at 4.).

6.  On June 9, 2021, the assigned magistrate judge found that plaintiff alleged he "did not have an available administrative remedy," and defendants must "plead and prove plaintiff's failure to exhaust available remedies."  (ECF No. 100 at 7.)  On September 3, 2021, the district court denied defendants' motion to dismiss in Matthews I "to the extent it is premised on failure

[3]  Defendants ask the Court to take judicial notice of plaintiff's prior case.  (ECF No. 97-3.)  A court may take judicial notice of court records.  See, e.g., Bennett v. Medtronic, Inc., 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue") (internal quotation omitted).  Defendants' request is granted.  (ECF No. 97-3.)

[4]  "If filing a grievance for an incident or issue that occurred before June 1, 2020, an offender was required to follow the procedures set forth in Title 15, sections 3084-3085."  (ECF No. 98 at 2 ¶ 6 (Moseley Decl.).)

[5]  In his pro se complaint filed in Matthews I, plaintiff checked "yes" to the question whether there was a grievance procedure available at the institution where the events relating to the complaint occurred, and checked "no" to the question whether he filed a grievance concerning the facts relating to the complaint.  Matthews I, Complaint (ECF No. 1 at 2).  Plaintiff also explained "there is no nonjudicial remedy for prison employee convicted of sexual abuse of an inmate – A Class G felony."  (Id.)

6

to exhaust administrative remedies."  Id. (ECF No. 106 at 2).

7.  On March 25, 2022, Matthews I was dismissed after plaintiff filed a stipulation for voluntary dismissal of the case.  Id. (ECF Nos. 126, 127.)

8.  On or about February 28, 2021, plaintiff filed a grievance (94357/94410) alleging that plaintiff was victimized by state employee Pinchback and that state employee Walker failed to prevent Pinchback's sexual misconduct even though Walker was aware of previous allegations of misconduct by Pinchback against another inmate.  (ECF No. 98 at 3-4 ¶ 9 (Moseley Decl.); 19-20 (Grievance).)  Plaintiff also alleged that plaintiff was interrogated by Lt. Huff, Sgt. Jackson and another member of "I.S.U. staff" on October 15, 2015, regarding the sexual misconduct by Pinchback and that plaintiff refused to be taken to an outside hospital for a S.A.R.T. exam.  Plaintiff further alleged that plaintiff was held down by defendant Tout while defendant Sysombath performed an illegal and intrusive exam on plaintiff's "most personal body part," which was "extremely painful" and "conducted in a "demoralizing and extremely humiliating" manner, and the "unrestricted view of female officer Tout was all the more offensive."  (Id.)  Plaintiff objected that the CDCR has proper procedures for medical staff to conduct forensic sex examinations of victims, which are to be conducted in a medical setting under the direct supervision of a physician, and any physical intrusive procedures must be performed by a physician, and health care staff must perform health services within the scope of a license.  (Id. (citing violations of DOM §§ 54040.6-54040.7, 54040.11, 54040.12, and 54040.12.2, and Cal. Code Regs. tit. 15, §§ 3287(b)(5), 3354(a)).)  Plaintiff complained that the "forensic exam was conducted outside a medical setting, . . . was invasive/intrusive, and I.S.U. staff (Sysombath) is not medical staff, a physician, nor licensed to perform S.A.R.T. examinations."  (ECF No. 98 at 20.)

9.  Plaintiff originally filed this grievance with the grievance office at California Institution for Men, which is where plaintiff was housed at the time he filed the grievance, and the grievance was assigned Log No. 94357.  (ECF No. 98 at 3 n.1.)

10.  Because the matters at issue in the grievance involved an incident that allegedly occurred at DVI, the grievance was redirected to the grievance office at DVI and reassigned Log

7

No. 94410.  (Id.)

11.  In plaintiff's appeal of Grievance Log No. 94410 to the Office of Appeals, plaintiff noted he was filing the appeal under the exception to the regular appeal process, citing § 3084.9, and stated "there shall be no time limit for allegation of staff sexual misconduct."  (ECF No. 98 at 12.)  Plaintiff complained that defendants Tout and Sysombath performed an illegal S.A.R.T. exam.  (ECF No. 98 at 12-13.)  Plaintiff further complained that the illegal forensic exam was invasive, intrusive, and was a violation of clearly established constitutional rights under the Fourth and Eighth Amendments, and a violation of California Code of Regulations title 15 § 3401.5(3)(F) as an invasion of privacy.  (Id.)

12.  In a letter dated May 19, 2021, referencing Grievance Log No. 94410, the Office of Appeals confirmed the "claim" was received on March 19, 2021.  (Id. at 11.)  The letter noted that the Office of Appeals had 60 calendar days to respond, and:

> [d]ue to the expiration of time, this response by the Office of Appeals will be the only response.  [¶]  You do not need to resubmit this claim to the Office of Grievances or to the CDCR Office of Appeals.  [¶] **Decision:  Time Expired**.

(Id. (emphasis in original).)

13.  On July 27, 2022, plaintiff filed a complaint in this action, asserting substantially the same claims as those brought in Matthews I.

14.  On August 17, 2019, plaintiff signed a health care grievance, Log CIM HC 19000856, complaining about the denial of mental health services in response to his request to see a psychologist regarding sexual misconduct in which he was the victim.  Matthews I (ECF No. 94 at 44-45).  This grievance was accepted by the Health Care Grievance Office and assigned on September 15, 2019.  (Id.)

15.  The parties identified no other grievances related to the allegations at issue herein.

16.  Plaintiff was a prisoner in CDCR custody in 2015, when the underlying incidents took place, on August 13, 2019, when plaintiff filed Matthews I, and on March 14, 2021, when plaintiff filed grievance 94410.

17.  Plaintiff was released from prison on April 29, 2025.  (ECF No. 101 at 5.)

8

V.     EXHAUSTION STANDARDS

A.  Exhaustion Requirements for California State Law Claims

Federal courts apply state administrative exhaustion requirements for state law claims. See City of Oakland, Cal. v. Hotels.com LP, 572 F.3d 958, 960 (9th Cir. 2009), as amended (Aug. 20, 2009). California law requires a prisoner to exhaust available administrative remedies "provided by statute" before filing a lawsuit. Wright v. State of Cal., 122 Cal. App. 4th 659, 664-65 (Cal. Ct. App. 2004); In re Serna, 76 Cal. App. 3d 1010, 1014 (Cal. Ct. App. 1978) ("The well established doctrine of exhaustion of administrative remedies applies to grievances lodged by prisoners"). A "plaintiff bears the burden of showing that he has complied." Baker v. Cnty. of Sonoma, 2010 WL 1038401, at *20 (N.D. Cal. Mar. 19, 2010) (citing Wright, 122 Cal. App. 4th at 665). The purpose of requiring exhaustion is partly "to alert the prison to a problem and facilitate its resolution." Parthemore v. Col, 221 Cal. App. 4th 1372, 1380 (Cal. Ct. App. 2013). When a statute expressly requires exhaustion, the exhaustion defense cannot be waived and may be asserted by defendant at any time. Saffer v. JP Morgan Chase Bank, N.A., 225 Cal. App. 4th 1239, 1250-53 (Cal. Ct. App. 2014). Failure to exhaust "denies jurisdiction to any court, state or federal, to consider [the non-exhausted] claims." Id. at 1248. Until exhausted, the claims remain "within the special jurisdiction of the administrative tribunal." Wright, 122 Cal. App. 4th at 668-69. When considering California state law claims, the Ninth Circuit also has viewed exhaustion as a jurisdictional requirement. See Hotels.com LP, 572 F.3d at 960.

B.  California's Inmate Appeal Process[6]

The State of California provides its inmates and parolees the right to administratively appeal "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health,

_____

[6] In 2020, California changed the grievance system from a three-level system to a two-level system. That change was effective June 1, 2020, after plaintiff submitted relevant appeals in the instant case. See Cal. Code Regs. tit. 15, § 3480. All citations to the California code in the text herein refer to the prior law, which can be found here: https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2020/04/Master-File-Appeals-Emerg-Regs_ADA.pdf. (California Code of Regulations, title 15, sections 3084 through 3084.9 were repealed, and replaced and renumbered with amended sections 3480 through 3487.)

safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a).  Within thirty days from the date of the incident, California prisoners are required to lodge their administrative complaint on a CDCR-602 form, which instructs the prisoner to explain the issue and set forth the action requested, and prisoners are required to "list all staff member(s) involved and [to] describe their involvement in the issue." Id. at § 3084.2(a)(3).  California regulations determine "the level of detail required in the grievance." Ordaz v. Fortune, 2020 WL 1315717, at *5 (Cal. Ct. App. Mar. 19, 2020).

In 2015, there were three formal levels of appeal review.  All appeals were required to be initially filed and screened at the first level unless the first level was otherwise waived.  The appeals coordinator was permitted to bypass the first level for various reasons outlined under Section 3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to the issues or claims. Id. at § 3084.1(b).  Responses at the third level of review were to "be completed within 60 working days from the date of receipt by the third level Appeals Chief," excluding certain exceptions not applicable here. Id. at § 3084.8(c)(3).

VI.    DISCUSSION

"California law is clear that exhaustion is a non-waivable jurisdictional requirement, and that defendants may raise the defense at any time, even for the first time on appeal." McMillan v. Ringler, 2022 WL 4096115, at *2 (E.D. Cal. Sept. 7, 2022) (citing Saffer, 225 Cal. App. 4th at 1250-53).  Plaintiff was required to exhaust available administrative remedies as set forth in California Code of Regulations, Title 15, § 3084, before turning to the courts.[7] See Wright, 122 Cal. App. 4th at 667-68.  Under California law, plaintiff bears the burden of demonstrating plaintiff exhausted his administrative remedies prior to suit. Id. at 665.  As discussed below, the Court finds that defendants' motion for summary judgment should be granted because plaintiff

---

[7] The exhaustion of administrative remedies is separate and distinct from the obligation to file a government tort claim. See Wright, 122 Cal. App. 4th at 663-64, 670-71 (dismissing state-law claims for failure to exhaust administrative remedies even though inmate filed timely government claim).  Thus, the district court's finding that plaintiff was not required to file a government tort claim based on plaintiff's allegations against defendants Tout and Sysombath resolved a different legal issue from the issue addressed herein:  whether plaintiff exhausted his administrative remedies against defendants Tout and Sysombath. See id.

failed to timely exhaust his available administrative remedies, and failed to demonstrate the exhaustion requirement should be excused.

### A. Subsequent Release from Prison Does Not Relieve Exhaustion Requirement

Plaintiff first contends that because plaintiff has now been released from prison, he is no longer a "prisoner" subject to the PLRA's exhaustion requirement. (ECF No. 101 at 10.) However, because only California state law claims remain, plaintiff's reliance on federal authorities fails. Plaintiff contends that Title 15 permits parolees to file grievances, but does not require a parolee to exhaust administrative remedies. (Id.) However, as set forth above, California state law requires exhaustion, and plaintiff cites no California authority, or Ninth Circuit authority applying California law, that supports plaintiff's view that an inmate paroled years after an incident is no longer required to exhaust administrative remedies. The Court is not persuaded that plaintiff is not required to exhaust his administrative remedies because he is now on parole.[8] The Court agrees with defendants that at the time plaintiff filed this action, plaintiff was a state prisoner and was required to exhaust administrative remedies.

### B. California State Law Governs Exhaustion

Plaintiff argues that defendants bear the burden of proving plaintiff failed to exhaust administrative remedies because exhaustion is an affirmative defense that defendants must prove. (ECF No. 101 at 11.) However, defendants demonstrated that the CDCR provides an administrative appeals process that was available to plaintiff as set forth in the California Code of Regulations, Title 15, Section 3084, et seq., and demonstrated that plaintiff did not file a grievance within thirty days from the date of the 2015 incident. (UDF 2, 4.) Thus, the Court finds defendants met their initial burden on summary judgment. Further, under California law, the exhaustion requirement is jurisdictional, and "plaintiff bears the burden of showing that he has complied." Baker, 2010 WL 1038401, at *20 (citing Wright, 122 Cal. App. 4th at 665). Plaintiff's reliance on cases applying federal law is unavailing because California law applies.

///

_____

[8] Plaintiff's argument that he could amend the complaint to rectify the exhaustion issue based solely on plaintiff's current parole status likewise fails.

11

C.  Plaintiff's Grievance Was Rejected as Untimely

Plaintiff offers several arguments as to why the Court should consider plaintiff's 2021 grievance 94410, submitted over five years after the underlying incidents, as exhausting his administrative remedies.  After setting forth the pertinent regulations, the Court addresses plaintiff's arguments seriatim.

Plaintiff was required to comply with the Title 15 regulations as they existed at the time of the incident.  See Myers v. Philip Morris Companies, Inc., 28 Cal.4th 828, 841 (2002) (unless there is an "express retroactivity provision, a statute will not be applied retroactively unless it is very clear from extrinsic sources that the Legislature . . .must have intended a retroactive application.); see also Farias v. Lopez, 2023 WL 6466395, at *4 (N.D. Cal. Oct. 3, 2023) (rejecting prisoner's effort to apply newer regulations allowing 60 days to file a grievance because the regulations in effect at the time of the alleged violations gave inmates only 30 days").  In 2015, a prisoner had 30 calendar days to submit an appeal from the date of event or decision being appealed, upon first having knowledge of the action or decision being appealed, or upon receiving an unsatisfactory departmental response to an appeal filed.  Cal. Code Regs. tit. 15, § 3084.8(b)(1)-(3); see Polk v. Creamer-Todd, 2016 WL 771329, at *3 (N.D. Cal. Feb. 29, 2016) ("Inmates have 30 calendar days to submit a grievance . . . from the occurrence of the event or the decision being appealed.") (internal quotation marks and citation omitted).  Prisoners were required to describe the adverse action or decision being appealed, and the relief requested; "list all staff member(s) involved and [] describe their involvement in the issue" and if unknown, "provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question," and to state "all facts known and available to [him] regarding the issue being appealed."  Cal. Code Regs. tit. 15, § 3084. 2(a)(3-4).  If an inmate submitted an appeal that was untimely, lacked critical information, or otherwise did not comply with the regulations governing the appeal process, the appeal could be cancelled or rejected, meaning it is not accepted for review.  The cancellation or rejection of an appeal at any level did not exhaust the appeal process.  Id. at § 3084.1(b).

Initially, the Court observes that it is undisputed that plaintiff did not file a grievance

12

within thirty days from the date of the 2015 incidents at issue here.[9]  Because plaintiff did not file a timely grievance, plaintiff did not properly exhaust.  See Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function without imposing some orderly structure on the course of its proceedings."); Wright, 122 Cal. App. 4th at 444 (California also requires exhaustion of administrative remedies before a state law claim may be filed in court).

Second. plaintiff argues that he did exhaust his administrative remedies through all levels of appeal prior to filing this action because on May 19, 2021, plaintiff received a "time expired" notice from the Office of Appeals on grievance 94410.  (ECF No. 98 at 11.)  Plaintiff argues that this "time expired" finding constituted a final decision that completed the grievance process because it was based on the CDCR's failure to respond to the appeal within the required 60 day period.  (ECF No. 101 at 13-14.)  Plaintiff's contention that the "time expired" decision constituted a final resolution of the grievance proceedings is unavailing.[10]  As argued by defendants, the Ninth Circuit has rejected plaintiff's argument.  (ECF No. 104 at 5 (citing Brannon v. Covarrubias, 2024 WL 1253788, at *2 (9th Cir. 2024).)  In Brannon, Brannon's initial grievance was rejected as untimely, and when Brannon submitted an appeal for review, the appeal was returned "time expired," because headquarters was unable to respond within 60 days.

---

[9]  Plaintiff claims that without formal discovery, plaintiff is unable to confirm that the 30-day time frame applied to the issues set forth in plaintiff's grievance 94410.  (ECF No. 103 at 2.)  But as discussed above, prison regulations effective in 2015 required grievances to be filed within 30 days from the event or decision being appealed.  Cal. Code Regs. tit. 15, § 3084.8(b)(1)-(3); see Polk, 2016 WL 771329, at *3.

[10]  In support, plaintiff cites multiple district court cases.  (ECF No. 101 at 14.)  However, the cited cases are all factually distinguishable because the initial grievances were not rejected as untimely.  For example, in James v. Mehta, the district court denied the exhaustion defense because the prisoner demonstrated that he filed an administrative grievance and followed up on his request but never received a response.  James v. Mehta, 2013 WL 5934397, at *4 (E.D. Cal. Nov. 5, 2013) (citing Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010); Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010); Cf. Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance."), report and recommendation adopted, 2014 WL 109502 (E.D. Cal. Jan. 9, 2014).

13

Brannon, 2024 WL 1253788, at *2.  In granting the motion for summary judgment on exhaustion grounds, the Ninth Circuit stated:

> the headquarters-level "time expired" decision did not change the fact that Brannon's grievance was untimely.  See [Cal. Code. Regs. tit. 15,] § 3486(m) ("A claim is not exhausted if it was . . . rejected pursuant to subsection 3487(a)."); see also Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . .").  And we have never adopted "a bright-line rule that any delay in a prison's response to an inmate's grievance is sufficient to render administrative remedies unavailable."

Id. (quoting Fordley v. Lizarraga, 18 F.4th 344, 358 (9th Cir. 2021)).  Like Brannon, plaintiff's initial appeal was rejected as untimely (ECF No. 98 at 16), and his appeal of the rejection was returned as "time expired" (id. at 11).  As with Brannon, the "time expired" decision does not change the fact that plaintiff's initial grievance was denied as untimely.  (ECF No. 98 at 16.)

Third, plaintiff argues that CDCR's own regulations demonstrate that no time limit should be imposed on grievances that allege sexual abuse by staff.  (ECF No. 101 at 16.)  Plaintiff relies on California Codes that state that "[w]hile the department maintains the right to defend against an inmate lawsuit on the grounds of the applicable statute of limitations, a time limit shall not be imposed upon when an appellant may file such a grievance [concerning a staff complaint for sexual misconduct," 15 Cal. Code of Reg. § 3084.9(a)(5)(A), and "[t]here shall be no time limit for allegations of staff sexual misconduct…"), 15 Cal. Code of Reg. § 3084.9(a)(5)(A)(1).  As argued by defendants (ECF No. 104 at 5), neither regulation was effective at the time of the October 15, 2015 incidents.  Section 3084.9(a)(5)(A) was not effective until October 20, 2016, over a year after the 2015 incidents at issue here.  See Cal. Code Regs. tit. 15, § 3084.9(a)(5)(A).  Plaintiff cites no authority demonstrating that § 3084.9(a)(5)(A) applies retroactively.  Plaintiff cites no other provision of Title 15, effective at the time of the 2015 incidents, that relieved plaintiff of his obligation to file a grievance within thirty days, as required under Cal. Code Regs. tit. 15, § 3084.8(b).

Fourth, plaintiff contends that the CDCR's regulations, Cal. Code Regs. tit. 15, § 3084.9(a)(5)(A), are consistent with the national standard adopted in 2012 under the federal Prison Rape Elimination Act ("PREA"), "which conditioned the eligibility for state prisons to

14

receive federal grant money on their compliance with these standards."[11]  (ECF No. 101 at 16 (citing 42 U.S.C. §§ 15602, 15605; Parker v. Garcia, 2024 WL 1641899, at *3 (E.D. Cal. Apr. 16, 2024)).[12]  Plaintiff claims his position is supported by Moore v. Hickey, 2020 WL 7059559, at *3 (D. Ariz. Dec. 2, 2020), claiming the court "interpreted PREA regulation to mandate that prisoner cannot be denied grievance if she waits to formally grieve the sexual abuse, 'whether that wait is thirty (30) days, thirty (30) weeks, or even thirty (30) years.'"  (ECF No. 101 at 16 (quoting Moore, 2020 WL 7059559, at *3).)  Plaintiff then argues that the decision to reject plaintiff's grievance as untimely was contrary to CDCR regulations and should have been corrected by the Office of Appeals.  (Id.)  However, Moore is inapposite.  (See ECF No. 104 at 7.)  In Moore, the prisoner sought reconsideration of the order denying Moore's motion for declaratory judgment, and argued, in pertinent part, that the court erred in analyzing the PLRA exhaustion requirement "because the PREA, and regulations promulgated under the PREA's ambit, exempt suits alleging sexual abuse in prison from the PLRA's exhaustion requirement," and prisoners are not required to exhaust administrative remedies because no time limit is imposed on filing a grievance alleging sexual abuse.  Moore, 2020 WL 7059559, at *1-2 (citing 28 C.F.R. § 115.52(b)(1)).  However, the district court found that nothing in § 115.52 "suggests that exhaustion of administrative remedies is not required when remedies are available," and while the grievance process can begin

_____

[11]  Plaintiff also claims that "PREA National Standard § 115.252 mandates that prisons 'shall not impose a time limit on when a resident may submit a grievance regarding an allegation of sexual abuse.'"  (ECF No. 101 at 16 (quoting 28 C.F.R. § 115.252(b)(1).)  However, as noted by defendants, § 115.252 only applies to Community Confinement Facilities.  28 C.F.R. § 115.252.

[12]  PREA was enacted by Congress to address the problem of prison rape by conditioning eligibility for federal grant money on compliance with PREA national standards for the detection, prevention, reduction, and punishment of prison rape.  Parker v. Garcia, 2024 WL 1641899, at *3 (E.D. Cal. Apr. 16, 2024).  In Parker, the district court noted that "PREA does not explicitly or implicitly suggest that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act."  Id. (internal quotation marks and citation omitted).  "[T]here is no provision in the Act for enforcement by inmates; enforcement is limited to small reductions in funding for systems out of compliance."  1 Rights of Prisoners § 3:48 (5th ed.); see 34 U.S.C. § 30301(13) ("States that do not take basic steps to abate prison rape by adopting standards that do not generate significant additional expenditures demonstrate such indifference" and therefore "are not entitled to the same level of Federal benefits as other States.").

15

any time after the incident, it must be completed prior to filing suit. Moore, 2020 WL 7059559, at *2. The court denied Moore's motion for reconsideration. Id. at *3.[13]

In Moore, the court was evaluating whether the prisoner had exhausted her PREA claims under the PLRA. Here, only state law claims remain, and exhaustion is not governed by the PLRA. As noted above, § 3084.9(a)(5)(A) which incorporated the revised timelines for grievances alleging sexual abuse, was not effective until October 20, 2016, over a year after the incidents at issue here. Contrary to plaintiff's position that CDCR and DVI were obligated to comply with PREA regulations in October 2015, because only California state law claims remain pending, the exhaustion requirement is governed by California State law, as well as prison regulations in effect at the time of the October 15, 2015 incidents. Because the revised timelines had not yet been adopted in California prison regulations, plaintiff's reliance on Moore is unavailing.

Further, unlike in Doe 8-10 v. Snyder, 945 F.3d 951 (6th Cir. 2019), where the prison employed a two step PREA grievance process separate from their three step grievance process for other claims, this Court is persuaded that "California regulations do not create a separate PREA grievance process." Delphin v. Maganola, 2025 WL 548456, at *7 (C.D. Cal. Feb. 6, 2025), report and recommendation adopted, 2025 WL 1092998 (C.D. Cal. Apr. 11, 2025), appeal dismissed sub nom. Delphin v. Magnola, 2025 WL 3126912 (9th Cir. Sept. 2, 2025). In Delphin, the court stated that "[t]he Court is aware of no authority in the Ninth Circuit that suggests the PREA displaces the administrative scheme outlined in applicable California regulations." Id. The court in Delphin relied on Porter v. Howard, 2012 WL 2836637, at *4 (S.D. Cal. Jul. 10, 2012), where the district court concluded that

> the PREA was not designed to supersede the California regulations
> governing prisoner grievances. The purposes of the PREA include,
> inter alia, establishing a zero-tolerance policy for prison rape,

[13] Subsequently, the magistrate judge found that administrative remedies were available to Moore, and she failed to prove that administrative remedies were effectively unavailable, and recommended the case be dismissed for failure to exhaust. Moore v. Hickey, 2021 WL 8972092, at *12 (D. Ariz. Jan. 26, 2021), report and recommendation adopted, 2021 WL 2144864 (D. Ariz. May 14, 2021), aff'd, 2022 WL 2315442 (9th Cir. June 28, 2022). The district court adopted the findings, dismissed the case, and the Ninth Circuit affirmed the dismissal. Id.

> developing national standards for punishing perpetrators of prison rape, and increasing accountability for prison officials. 15 U.S.C. § 15602. Contrary to what Porter argues, the PREA does not mandate any particular administrative remedy.

Porter, 2012 WL 2836637, at *4 (S.D. Cal. July 10, 2012), aff'd in part, vacated in part, remanded, 531 F. App'x 792 (9th Cir. 2013) ("Porter provides no support for his contention that he was excused from the requirement that he file an administrative grievance by operation of the [PREA]."). The court in Porter cited the dissent by Judge Stevens, who "stat[ed] tacitly that the PREA does not supersede state administrative remedies in discussing the potentially harsh consequences of the PLRA's exhaustion requirement under state prison grievance systems." Porter, 2012 WL 2836637, at *4 (citing Woodford v. Ngo, 548 U.S. at 118) (Stevens, J., dissenting). In Delphin, the court recommended that the prisoner's sexual assault claim be dismissed based on the failure to exhaust administrative remedies, which was subsequently adopted and affirmed on appeal. Delphin, 2025 WL 548456, at *7.[14] Thus, this Court finds that the fact that PREA was enacted in 2012 does not trump or supplant the CDCR regulations in place in 2015. Plaintiff was required to exhaust administrative remedies as provided in those CDCR regulations effective in 2015, as discussed above.

Accordingly, for the above reasons, the Court finds that because plaintiff failed to timely exhaust his sexual assault and battery and intentional infliction of emotional abuse claims against defendants Tout and Sysombath, the motion for summary judgment should be granted unless plaintiff can demonstrate that he should be excused from the exhaustion requirement.[15]

D. Plaintiff Should Not Be Excused From Exhaustion Requirement

The Court concludes that plaintiff has not established he should be excused from the

---

[14] Defendants also argue that PREA does not apply to plaintiff's claims based on the express language of PREA which excludes from the definition of rape, "custodial or medical personnel gathering physical evidence, or engaged in other legitimate medical treatment, in the course of investigating prison rape." (ECF No. 104 at 8 (quoting 34 U.S.C. § 30309 (2024). However, the district court found that plaintiff's "allegations plausibly support a claim for sexual battery under Penal Code section 243.4(a)." (ECF No. 87 at 6.)

[15] Because the Court finds plaintiff's grievance 94410 was untimely, the Court need not address whether grievance 94410 was sufficient to exhaust plaintiff's sexual battery and intentional infliction of emotional distress claims.

exhaustion requirement.

Generally, "a litigant will not be afforded judicial relief unless he has exhausted available administrative remedies." See In re Dexter, 25 Cal.3d 921, 925 (1979) (requiring state prisoner to exhaust available administrative remedies before commencing a habeas action in state court); see also Foster v. Sexton, 61 Cal. App. 5th 998, 1023 (Cal. Ct. App. 2021) ("Where administrative remedies exist, California courts usually will not have subject matter jurisdiction over a dispute until the administrative tribunal has made a final determination."). The exhaustion requirement applies to prisoner grievances, even where the prisoner seeks money damages unavailable in the administrative process. Wright, 122 Cal. App. 4th at 671; Foster, 61 Cal. App. 5th at 1023. As previously discussed, prison grievances are subject to a multilevel review process, and administrative remedies are usually not deemed exhausted until the appeal reaches the third level. Cal. Code Regs. tit. 15, §§ 3084.1, 3084.7.

California courts do recognize a few exceptions to the exhaustion requirement. Foster, 61 Cal. App. 5th at 1025. In Foster, the state court identified the three circumstances in which the Supreme Court considered the unavailability of administrative remedies under the PLRA,[16] but focused on the third circumstance where "an administrative procedure is unavailable 'when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 1027[17] (quoting Ross v. Blake, 578 U.S. 632, 633 (2016)). The court in Foster explained that "[b]ecause the reasons for the federal and state law exhaustion requirements are essentially the same, we conclude the third category also identifies circumstances in which an administrative procedure is 'unavailable' to an inmate for purposes of California law." Foster, 61 Cal. App. 5th at 1026-27.

---

[16] As in Foster, the other two circumstances identified in Ross, 578 U.S. at 644--(1) when the administrative procedure "operates as a simple dead end," and (2) if the procedure is "so opaque that it becomes, practically speaking, incapable of use"--do not apply in this case.

[17] The court in Foster defined "machination" as "a scheming or crafty action or artful design intended to accomplish some usu[ally] evil end." Foster, 61 Cal. App. 5th at 1025 n.10 (citation omitted).

Here, plaintiff argues that the threat of retaliation for reporting an incident can render the prison grievance process unavailable and therefore excuse the failure to exhaust administrative remedies. (ECF No. 101 at 17 (citing Rodriguez v. Cnty. of Los Angeles, 891 F.3d 776, 794 (9th Cir. 2018); McBride v. Lopez, 807 F.3d 982, 986-88 (9th Cir. 2015)). In McBride, the Ninth Circuit adopted a two-part test containing both a subjective and objective component to evaluate whether threats and fear of retaliation might be sufficient to render the inmate grievance procedure unavailable. Id. First, the prisoner must provide a basis for the court to hold that he "actually believed prison officials would retaliate against him if he filed a grievance." Id. at 987. Second, the prisoner must show that "his belief was objectively reasonable" by demonstrating that "a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance." Id. at 987-88. This Court finds that plaintiff's contention that retaliation against plaintiff rendered the grievance process unavailable also fits within the third category identified as potentially rendering administrative remedies unavailable in Foster. Thus, the Court will evaluate whether plaintiff has adduced evidence demonstrating that the alleged retaliation thwarted plaintiff's efforts to complete the grievance process through machination, misrepresentation or intimidation by using the test provided in McBride.

In support of his argument that he was deterred from filing a grievance due to his fears of retaliation, plaintiff contends that he was afraid he would be retaliated against for the sexual conduct with Ms. Pinchback based on prison staff's general protective attitude toward female staff, and claims he was "routinely harassed" by DVI staff while plaintiff was housed in administrative segregation. (ECF No. 101-1 at 1, 3 ¶¶ 3-4, 13.) Notwithstanding defendants' hearsay objections,[18] plaintiff's declaration sets forth generalized threats and his subjective fear about being criminally charged for the sexual conduct with Ms. Pinchback, having to spend the rest of his life in prison, and potentially being physically attacked or subjected to false

[18] Defendants object to certain statements in plaintiff's declaration as inadmissible hearsay and because plaintiff lacked personal knowledge of the matters described. (ECF No. 104-1.)

19

disciplinary charges. Plaintiff's statements demonstrate he was afraid of retaliation based on being viewed as the perpetrator rather than the victim. But plaintiff has failed to submit evidence to support a finding that he "actually believed prison officials would retaliate against him if he filed a grievance." McBride, 807 F.3d at 987. Plaintiff's declaration is not supported by specific instances where an identified prison staff member threatened plaintiff if he filed a grievance or took some action to prevent plaintiff from filing a grievance. Plaintiff relies on Wilson v. Delano State Prison, 2024 WL 1312342, at *9 (E.D. Cal. Mar. 27, 2024). (ECF No. 101 at 19.) However, in Wilson, the prisoner identified a specific threat that if Wilson filed a grievance, he would be targeted wherever he went. Id. Here, plaintiff identified no such specific threat and a generalized fear is insufficient. See also Garcia v. Baca, 2008 WL 5119156, at *5 (C.D. Cal. Dec. 2, 2008) ("[A] generalized fear of retaliation is not an exception to the PLRA's exhaustion requirement.").

In addition, plaintiff cites no facts tying such generalized threats or fear of retaliation to the actions of defendants Tout or Sysombath. Plaintiff claims that "the last thing [he] wanted to do . . . was to file a grievance against . . . Defendants Tout and Sysombath, which would only invite more negative attention on [him]," and he "knew that any attempt to report defendants Tout and Sysombath would backfire on [him] and risk physical violence." (ECF No. 101-1 at ¶¶ 22, 23.) But plaintiff fails to explain how filing a grievance against defendants Tout and Sysombath, based on their conduct in taking the DNA sample, would put plaintiff at risk. Rather, the threats identified by plaintiff were tied to his conduct with Ms. Pinchback, not the actions of defendants Tout and Sysombath. And while plaintiff recounts the taking of his DNA by defendants Tout and Sysombath, such conduct, standing alone, is insufficient to demonstrate their actions were intended to prevent plaintiff from filing a grievance. Even if plaintiff considered defendants' actions as retaliatory, their actions include no reference to a grievance or anything else that might trigger risk of future harm to plaintiff. See McBride, 807 F.3d at 988 ("McBride's case stands in stark contrast to the threats made to prisoners in Turner and Hemphill, which explicitly threatened retaliation if the prisoner used the prison's grievance system.")

While plaintiff claims he feared criminal prosecution, he does not claim anyone

20

threatened him with criminal prosecution.

This Court finds that plaintiff fails to show that the threats would cause a reasonable prisoner to believe the threats were meant to prevent the use of the grievance system or that such threats would prevent a reasonable person from using the grievance process because none of the threats were tied to the use of the grievance process.  As in McBride, plaintiff failed to show there was an objective indication that a reasonable inmate would have understood the threats to be aimed at deterring plaintiff from filing a grievance.  Plaintiff's subjective fears about possible retaliation are insufficient to show an objectively reasonable fear of retaliation for filing grievances.  See Rodriguez, 891 F.3d at 794.

To the extent plaintiff argues that his administrative remedies were unavailable based on his housing in administrative segregation, plaintiff provides no evidence that his housing in administrative segregation prevented him from filing an administrative grievance.  While plaintiff declares he had no privileges and was not allowed to receive any packages, make phone calls, or go to canteen while he was housed in administrative segregation, plaintiff's declaration does not address the availability of grievance forms, or his ability to file a grievance.

Because plaintiff fails to demonstrate administrative remedies were unavailable,[19] defendants' motion for summary judgment should be granted.

E.  Conclusion

For the above reasons, the undersigned finds that plaintiff failed to timely exhaust his administrative remedies under California State law, and plaintiff failed to meet his burden that he should be excused from exhausting his administrative remedies, as required by California State law.  Thus, defendants' motion for summary judgment should be granted, and this action should be closed.

///

---

[19] In light of this finding, the Court does not reach defendants' argument that "[p]laintiff could have, and should have, filed a grievance as soon as possible, six years ago, explaining the reason for the late filing if his retaliation fears were genuine."  (ECF No. 104 at 11 (citing Cal Code. Regs., tit. 15, § 3084.6(3),(4); Griffin v. Espinda, 2011 WL 2357655, at *6 (D. Hawaii 2011) (where the plaintiff had not explained why he did not timely file a grievance after his incapacity ended, the court dismissed his complaint).

VII.    PLAINTIFF'S REQUEST FOR SUMMARY JUDGMENT

In his opposition, plaintiff also asks the Court to sua sponte grant summary judgment in plaintiff's favor on defendants' first affirmative defense for failure to exhaust based on the same arguments plaintiff presented in opposing defendants' motion for summary judgment. (ECF No. 101 at 20-21.) Because the Court finds that plaintiff failed to exhaust administrative remedies as required, plaintiff's request should also be denied.

VIII.   PLAINTIFF'S REQUEST FOR DISCOVERY

Finally, plaintiff argues that if the Court is inclined to grant defendants' motion for summary judgment, plaintiff should first be permitted to propound discovery on the investigation conducted against plaintiff by DVI's Investigative Services Unit ("ISU") "to establish that the grievance process was unavailable to plaintiff." (ECF No. 101 at 22.) This Court finds that further discovery is not required because the ISU's investigation into whether plaintiff was culpable in connection with the sexual misconduct with Ms. Pinchback does not explain why plaintiff could not file a grievance alleging that defendants Tout and Sysombath retaliated against plaintiff by extracting his DNA. Rather, plaintiff's arguments are more directed to the merits of plaintiff's underlying claims against defendants. Plaintiff's request for discovery is denied.

IX.    CONCLUSION

Viewing the evidence in the light most favorable to plaintiff and drawing all reasonable inferences from the record in his favor, the undersigned recommends that defendants' motion for summary judgment be granted.

In accordance with the above, IT IS HEREBY ORDERED that:

1. The Clerk of the Court is directed to change the caption to defendants Sysombath and Tout, and remove defendant Pinchback, who was previously dismissed.

2. Defendants' request for judicial notice is granted. (ECF No. 97-3.)

3. Plaintiff's request for discovery (ECF No. 101 at 22) is denied.

Further, IT IS RECOMMENDED that defendants Tout and Sysombath's motion for summary judgment (ECF No. 97) be granted, judgment be entered for defendants Tout and Sysombath, and this action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 28, 2026

_____
CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/matt1329.msj.fte

23